Case 4:22-cv-03307   Document 34   Filed on 03/17/23 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
March 17, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BILL A. BUSBICE, JR., §<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>INDUSTRIAL MOTOR POWER CORP., §<br>*Defendant*. § | CIVIL ACTION NO. 4:22-cv-3307 |

## MEMORANDUM AND ORDER

This case involves an investment relating to the purchase and resale of two Solar Centaur 50 Turbine Generator Sets (Gen-Sets) that failed to meet the investor's expectations. Plaintiff Bill Busbice, Jr. is an individual investor who resides in Texas. ECF 1-4 ¶¶ 3, 10. Defendant Industrial Motor Power Corporation (IMPC) is a broker and wholesaler of power generator sets and other equipment that is organized under the laws of California and has its principal place of business in California. *Id.* ¶¶ 4, 10. IMPC removed the case from state court on September 27, 2022 based on diversity jurisdiction.[1] ECF 1. The parties consented the jurisdiction of this Magistrate Judge for all purposes, including final judgment. ECF 16.

Multiple motions are currently pending: Defendant's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) and in the Alternative to Transfer Pursuant to 28 U.S.C. § 1404(a) (ECF 4); Defendant's Motion to Strike Plaintiff's Response to the Motion to Dismiss (ECF 17); Plaintiff's Motion to File an Amended Complaint to Add Defendant

---

[1] Diversity jurisdiction is undisputed.

Leeds Eustis (ECF 25); and Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Motion to Dismiss (ECF 28). Having considered the parties' submissions and the law, the Court DENIES Defendant's Motion to Dismiss and in the Alternative to Transfer; DENIES IN PART AND GRANTS IN PART Defendant's Motion to Strike; GRANTS Plaintiff's Motion to Amend to add a non-diverse defendant; and REMANDS this case to state court. In light of the Court's rulings, Plaintiff's Motion for Leave to File a Sur-Reply is DENIED as moot.

## I. Personal Jurisdiction and Venue

### A. Rule 12(b)(2) Standards

Dismissal for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1016 (S.D. Tex. 2018), aff'd sub nom. *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215 (5th Cir. 2020). When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant by prima facie evidence. *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020). The court determines whether plaintiff has met this prima facie burden by considering the allegations of the complaint as well as the contents of the record at the time of the motion. *Id.*; *Fintech Fund*, 327 F. Supp. 3d at 1016. The Court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *Thomas v. Trico Prod. Corp.*, No. CIV.A. B-05-174, 2006 WL 801506, at *2 (S.D. Tex. Mar. 28, 2006). However, the court is not required to credit conclusory allegations, even

if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). If the plaintiff meets the prima facie burden, the burden shifts to defendant to show that the assertion of jurisdiction would be unfair. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 245 (5th Cir. 2008).

### B. Due Process Standards

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the forum state's long-arm statute, and (2) to the extent permitted by the due process clause of the Fourteenth Amendment. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). Because the Texas long-arm statute is coextensive with the limits of federal due process, this court need only address whether the exercise of jurisdiction over a defendant comports with the requirements of the Fourteenth Amendment. *Torson v. Hyundai Oilbank Co. Ltd.*, No. 22-20065, 2022 WL 4103263, at *2 (5th Cir. Sept. 7, 2022).

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) the defendant has "purposefully availed itself of the benefits and protections of the forum by establishing 'minimum contacts' with the forum state," and (2) the exercise of personal jurisdiction over the defendant aligns with "traditional notions of fair play and substantial justice." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214-15 (5th Cir. 2000); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Both prongs of the due process test must be fulfilled for this court to exercise personal jurisdiction over a defendant.

***Minimum contacts.*** The first prong of the due process analysis, referred to as the "minimum contacts" requirement, may be satisfied if either: (1) the controversy is "related to" or "arises out of" the nonresident defendant's contacts with the forum (specific jurisdiction), or (2) the defendant has "continuous and systematic" contacts with the forum (general jurisdiction). *Alpine View*, 205 F.3d at 215; *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 413-17 (1984). The "continuous and systematic contacts" test required for general jurisdiction requires extensive, substantial contacts and is a difficult test to meet. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011)). The "paradigm forum for the exercise of general jurisdiction" over a corporation are the corporation's place of incorporation and the principal place of business. *Id.* While those places may not be the only forums in which a corporation may be subject to general jurisdiction, a corporation is not subject to general jurisdiction in every state in which it "engages in a substantial, continuous, and systematic course of business." *Id.* at 138.

As to specific jurisdiction, the Court considers:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

4

*Getagadget, L.L.C. v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204, at *3 (5th Cir. Mar. 30, 2022) (citation omitted). In a breach of contract case, a district court must analyze minimum contacts utilizing a "'highly realistic approach' rather than 'mechanical tests' or 'theories of the place of contracting or performance' to determining whether [specific] personal jurisdiction exists." *Garcia Hamilton & Assocs., L.P. v. RBC Cap. Markets, LLC*, 466 F. Supp. 3d 692, 702 (S.D. Tex. 2020) (citing *Jones v. Artists Rights Enf't Corp.*, 789 F. App'x. 423, 426 (5th Cir. 2019)). Under the highly realistic approach, merely contracting with a Texas company is insufficient to establish specific personal jurisdiction. *Id.* at 702-03 (citations omitted); *see also Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("It is well established that 'merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction.'" (citation omitted)). The highly realistic approach considers "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine whether 'the defendant purposefully established minimum contacts' with the forum state.'" *Garcia*, 466 F. Supp. 3d at 702 (citations omitted).

In an intentional tort case, a district court's exercise of jurisdiction over an out-of-state defendant "must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (citation omitted)). As stated in *Walden*, "the plaintiff cannot be the only link between the defendant and the forum." 571 U.S. at 285. The Fifth Circuit held in *Danziger* that

5

Supreme Court's *Walden* decision makes clear that "mere injury to a forum resident is not a sufficient connection to the forum . . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  24 F.4th at 496–97.

***Fundamental fairness.***  Under the second prong of the due process analysis, the "fundamental fairness" requirement, a court considers several factors to decide whether the exercise of jurisdiction comports with traditional notions of fairness and substantial justice. The factors to be examined include: (1) the burden on the nonresident defendant to defend itself in the forum; (2) the interests of the forum state; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the states' shared interest in furthering fundamental social policies. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

> **C. Plaintiff Met His Prima Facie Burden as to Specific Jurisdiction and Defendant Has Not Shown that the Exercise of Personal Jurisdiction in this Case Would be Unfair.**

IMPC moves to dismiss for lack of personal jurisdiction, arguing that there is no basis for the exercise of either general or specific jurisdiction in Texas.  ECF 4.  Busbice responds that he has alleged sufficient facts to meet his burden as to both general and specific jurisdiction because IMPC conducts a worldwide business through an ecommerce website that reflects substantial business in Texas, and his claims in this case arise out of IMPC's solicitation in Texas of Busbice's investment.  ECF 14.

> **1. General Jurisdiction**

6

IMPC argues that under *Daimler*, this is not the exceptional case in which general jurisdiction exists in Texas over a corporation having its place of incorporation and principal place of business in California. ECF 4 at 10-11 (citing *Daimler*, 571 U.S. at 137; *Torson v. Hyundai Oilbank Co.*, No. 4:21-CV-00778, 2022 WL 79649, at *3 (S.D. Tex. Jan. 7, 2022), aff'd, No. 22-20065, 2022 WL 4103263 (5th Cir. Sept. 7, 2022)). IMPC represents it is not even registered to do business in Texas, and its only link to Texas is its contract with Busbice. *Id.* In response, Busbice argues that IMPC does extensive business in Texas and maintains "continuous and systematic" contacts with Texas through its e-commerce website. *See* ECF 14 at 13-22 (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (adopting the "spectrum" of internet business analysis of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Of course, the internet and its use in commerce and culture has changed significantly since 1999 when the Fifth Circuit adopted the *Zippo* test. More importantly, the Supreme Court and the Fifth Circuit have taken a more restrictive approach to general jurisdiction in the last 24 years. *See Daimler*, 571 U.S. at 137; *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting that *Zippo*'s sliding scale is not well-suited to the general jurisdiction inquiry).

In any event, "[t]he analysis applicable to a case involving jurisdiction based on the Internet should not be different at its most basic level from any other personal jurisdiction case." *CAP Barbell, Inc. v. Hulkfit Prods., Inc.*, No. CV H-22-2371, 2023 WL 2247057, at *4 (S.D. Tex. Feb. 27, 2023) (citing *Admar Int'l, Inc. v. Eastrock, LLC*, 18 F.4th 783, 786 (5th Cir. 2021)). Website activity is only relevant to the extent it evinces purposeful

7

targeting of the forum state. *Id.* IMPC has presented evidence that its website is merely passive advertising and does not allow for the purchase of products. ECF 4-1 ¶ 4. Busbice contends that IMPC's website is interactive to the extent it allows visitors to the site to request additional information and has submitted, as evidence that IMPC conducts extensive business in Texas, screen shots from IMPC's website showing projects and sales IMPC completed in Texas. ECF 14-4. However, the screen shots on which Busbice relies do not show that IMPC targeted Texas distinctly from other forums. *See* https://www.impcorporation.com/completed-projects/ (last visited March 7, 2023) (identifying projects and sales by IMPC in Oregon, Canada, Europe, and the Bahamas, among others). In short, selling a product to a Texas resident generally is not enough to support general jurisdiction in Texas. *See Johnston*, 523 F.3d at 611 (sales to ten different customers located in Texas not enough to establish general jurisdiction).

### 2. Specific Jurisdiction

As noted above, determining specific jurisdiction requires consideration of a defendant's contacts in connection with the causes of action that a plaintiff is asserting. In other words, "the proper focus on the relationship among the defendant, the forum, and the litigation." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008). Here, Busbice asserts causes of action against IMPC for breach of contract, quantum meruit, promissory estoppel, fraud, conversion, violation of the Texas Theft Act, and tortious interference with prospective business relationship. ECF 1-4 at 5-12. Applying the "highly realistic approach" endorsed in *Garcia*, 466 F. Supp. 3d at 702, the Court finds that it has specific personal jurisdiction over IMPC as to Busbice's claims sounding in contract. In

8

addition, the Court finds that Busbice's allegations of IMPC's intentional conduct in Texas subjects it to personal jurisdiction as to Busbice's claims sounding in Tort. *Danziger & De Llano, L.L.P.*, 24 F.4th at 495.

Busbice alleges that IMPC contacted Busbice in Texas in 2020 and proposed a transaction in which Busbice would pay $3,000,000 to purchase the Gen-Sets and IMPC would immediately resell them to a known buyer for $5,000,000. ECF 1-4 ¶¶ 5, 10-11. Busbice alleges he entered an oral contract with IMPC and sent $3,000,000 to IMPC in California from an account in Texas. *Id.* Busbice alleges that the Gen-Sets were not resold as promised and remain in IMPC's custody and control—he does not say where—despite Busbice's ownership. *Id.* ¶ 13. Busbice's state court Petition does not identify who contacted him on behalf of IMPC to initiate the transaction. *Id.* at 5-12.

IMPC represents in its Motion to Dismiss that its Chief Executive Officer, Nicholas Nadjarian, communicated exclusively with Busbice's agent, who coordinated the transaction without ever disclosing Busbice's identity or his location. ECF 4 at 7; ECF 4-1 ¶ 3. IMPC contends the Gen-Sets were purchased in California and title was delivered in California, and that the Gen-Sets themselves are located in Alaska. ECF 4 at 7; ECF 4-1 ¶ 2. Based on these facts, IMPC argues that its contacts with Texas are merely fortuitous due to Busbice's residence and are not the result of intentional conduct in Texas.

IMPC's motion ignores key facts that for current purposes the Court accepts as true. *See Thomas v. Trico Prods. Corp.*, No. CIV.A. B-05-174, 2006 WL 801506, at *2 (S.D. Tex. Mar. 28, 2006) (citations omitted) ("Conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor."). First, Nadjarian testifies that

9

he communicated exclusively from California with "Plaintiff's agent." ECF 4-1 ¶ 3. Nadjarian does not deny that IMPC initiated and maintained communications regarding the transaction with Leeds Eustis of Inscription Capital, who was located at all times in Texas. ECF 14-1 ¶ 3; ECF 14-3 at 2. Busbice never communicated with anyone in California and negotiated exclusively with Eustis in Texas. ECF 14-1 ¶ 3; ECF 14 at 3. Busbice contends that Eustis was acting as the parties "mutual agent." ECF 14-1 ¶ 3. Moreover, Busbice alleges that IMPC engaged a Texas company, Solar Turbines, Inc., to inspect the Gen-Sets specific to the transaction. ECF 14 at 3. Based on the representations of Eustis, in Texas, that IMPC had a buyer in place for the Gen-Sets, Busbice initiated a $3,000,000 wire transfer from his account in Texas to IMPC in California. ECF 14-1 ¶ 4. These facts establish not just that Busbice is located in Texas, but that negotiations for the transaction took place primarily in Texas, Busbice was injured in Texas, and most significantly, IMPC targeted Texas through its decision to enlist Eustis in Texas to find an investor and its communications with Eustis in Texas that were designed to induce Busbice to pay IMPC $3,000,000.

IMPC moves to strike Busbice's Affidavit on grounds it is hearsay and not based on personal knowledge. ECF 17. IMPC's objection to paragraph 3 of the Affidavit is valid as to Busbice's statement "I am informed Eustis and IMP have engaged in prior dealings and IMP knows that Eustis resides in Texas." However, as to the remainder of the Affidavit there is no reason to discredit Busbice's assertion of personal knowledge that he was dealing with Eustis, that Eustis was relaying the terms of the deal from IMPC, and that Busbice wired money to IMPC for the purchase of the Gen-Sets. Whether or not Busbice

10

has personal knowledge that IMPC knew that Eustis was in Texas, it is a reasonable inference based on counsel for IMPC's March 30, 2021 letter to Busbice's counsel stating "All that you ask in your letter were already provided at the outset and in your possession (or constructive possession) through your Financial Advisor [FA] and representative in this matter, Inscription Capital." ECF 14-3 at 2. Nadjarian does not deny in his Affidavit that he initiated contacted with Eustis or that he knew Eustis was located in Texas. *See* ECF 4-1. As to IMPC's objections to paragraph 4 of the Affidavit, they go to the merits of Busbice's claims, not to jurisdictional facts. In any event, the "best evidence" objection is without merit because Busbice alleges he had only an oral contract and his Affidavit does not attempt to prove the contents of a writing. ECF 1-4 ¶ 11; ECF 14-1. Therefore, IMPC's Motion to Strike is granted only in part as to the sentence from paragraph 3 quoted above. Busbice's Affidavit and other evidence along with the allegations in his Petition are sufficient to meet his prima facie burden to show specific personal jurisdiction.

> **D. IMPC Has Not Met its Burden to Show That the Exercise of Personal Jurisdiction Offends Traditional Notions of Fair Play and Substantial Justice or That Venue is Improper.**

IMPC's Motion to Dismiss does not directly address the second prong of the due process analysis, i.e., whether despite the showing of minimum contacts the exercise of personal jurisdiction by a court in Texas offends traditional notions of fair play and substantial justice. *See* ECF 4. Instead, IMPC moves the Court pursuant to Federal Rule of Civil Procedure 12(b)(3) to dismiss the case for improper venue under 28 U.S.C. § 1406(a), or to transfer the case to the Central District of California for the convenience of the parties under 28 U.S.C. § 1404(a). *Id.* In deciding a Rule 12(b)(3) motion, the Court

"must accept undisputed facts in a plaintiff's pleadings as true and resolve factual conflicts in the plaintiff's favor." *Fernandez v. Soberon*, No. CIV.A. H-13-0325, 2013 WL 2483345, at *2 (S.D. Tex. June 10, 2013).

> Title 28 Section 1391(b) allows plaintiff to bring a civil action in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

IMPC repeatedly argues that venue is improper under § 1391(b)(2) because Busbice admitted in paragraph 10 of his "Complaint" that the transaction occurred in California. *See, e.g.,* ECF 4 at 14; ECF 18 at 5. IMPC's argument is not supported by the actual language of the cited paragraph of Busbice's pleading, which admits nothing more than that IMPC is located in California. ECF 1-4 ¶ 10. More importantly, the transaction giving rise to this case is not IMPC's purchase of the Gen-Sets in California, but Busbice's payment of $3,000,000 to IMPC based on IMPC's allegedly fraudulent representations to Busbice in Texas. But most importantly, § 1391(c) provides that for all venue purposes, an entity with the capacity to be sued in its common name, such as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is brought. *Cerda v. Almanza Villarreal Forwarding, LLC*, No. 5:22-CV-43, 2022 WL 7376188, at *2 (S.D. Tex. Oct. 3, 2022) (citing 28 U.S.C. § 1391(c)). Having ruled

that IMPC is subject to specific personal jurisdiction in Texas, the Court finds venue is proper and § 1406(a) does not apply.

IMPC did not assert the existence of a contractual forum selection clause or a governing law provision as a basis for dismissal or transfer in its alternative Rule 12(b)(3) Motion. *See* ECF 4. However, in its Reply in support of transfer it cites isolated paragraphs of what it obliquely calls "this contract" that provide for arbitration of disputes in California and application of California law. ECF 18 at 5-6. Busbice denies the contract exists. ECF 28 at 4-5. It is unclear whether IMPC is relying on "this contract" in support of its motion to dismiss for improper venue. *See* ECF 4; ECF 28 at 5. If so, the argument fails because the Supreme Court has held that whether venue is improper for purposes of § 1406(a) and Rule 12(b)(3) "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013).

A challenge to venue based on a forum selection clause may be raised through a motion to transfer under § 1404(a). *Id.* at 59. But IMPC has not shown that a valid forum selection clause exists. IMPC based its motion to transfer under § 1404(a) solely on forum non conveniens factors and raised the contractual issue only in conclusory manner in a Reply. ECF 4 at 14-19; ECF 18 at 5-6. Moreover, the cited paragraphs do not select a forum for civil litigation, but select (1) a forum for arbitration and (2) governing law. ECF 18 at 6. Therefore, the Court finds inapplicable the general rule that when the parties have

13

agreed to a valid forum-selection clause the case should be transferred to the agreed upon forum. *Atl. Marine Const. Co.*, 571 U.S. at 62 (explaining the general rule).

The Court has discretion in deciding whether to transfer a case for the convenience of parties and witnesses. *Martinez v. Honeywell Int'l, Inc.*, No. CV H-22-697, 2023 WL 416547, at *2 (S.D. Tex. Jan. 25, 2023) ("A district court's venue-transfer decision is reviewed for 'a clear abuse of discretion' based on 'extraordinary errors' leading to 'a patently erroneous result.'" (citation omitted)). The Court finds below that good cause exists to allow Busbice to file an Amended Complaint joining a non-diverse defendant. As explained below, joinder of a non-diverse defendant requires remand to state court. Therefore, IMPC alternative motion to transfer under § 1404(a) for the convenience of the parties and witnesses is denied.

## II.     Plaintiff's Motion to Amend to Add Non-Diverse Defendant

### A. Legal Standards/*Hensgens* Factors

A motion to amend filed prior to expiration of the scheduling order deadline, as here, is governed by the liberal standards of Federal Rule of Civil Procedure 15(a)(2). *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (holding that, while not automatic, leave to amend under Rule 15(a)(2) should be freely given when justice requires). However, different standards apply when the motion to amend seeks leave to add a nondiverse party that will defeat diversity jurisdiction. *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) (holding that when faced with an amendment that would defeat jurisdiction the court should scrutinize the amendment more closely than an ordinary amendment). *Hensgens* directs district courts deciding whether to exercise

14

discretion to allow the joinder of a nondiverse defendant to consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* If the Court allows the joinder of the nondiverse party, it must remand the case to state court under 28 U.S.C. § 1447(e). *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999) (ruling that post-removal joinder of a non-diverse party, whether dispensable or not, destroys diversity jurisdiction and requires remand pursuant to § 1447(e)). The Court concludes that the *Hensgens* factors favor granting Busbice leave to amend and remanding this case to state court.

### B. The *Hensgens* Factors Weigh in Favor of Leave to Amend

#### 1. Plaintiff Has a Purpose in Joining Eustice Other Than to Defeat Federal Jurisdiction

Plaintiff seeks to add Eustis because he "was directly involved as a participant in the transaction between Busbice and IMP[C] and has personal knowledge of the events" giving rise to this lawsuit. ECF 25 at 4. Defendant argues the Motion to Amend should be denied because Plaintiff knew about the role Eustis played in the transaction at the time it initiated the state court case in October 2021 and Plaintiff is only seeking to join Eustis now to destroy diversity jurisdiction. ECF 30.

The need to add Eustis as a party arose when IMPC made clear they intend to argue that Eustis acted only as Busbice's agent. *See* ECF 4. The proposed Amended Complaint not only adds Eustis as a party to existing claims but adds a claim of breach of fiduciary

15

duty against Eustis only. ECF 25-1, ¶¶ 57-64. The proposed Amended Complaint also adds specific factual allegations about Eustis to claims asserted against IMPC and Eustis jointly. *See, e.g., id.* ¶ 30 ("IMP[C] and Eustis made a promise to Busbice that IMP[C] had secured a third-party purchaser . . . ."); ¶ 34 ("IMP[C] and Eustis induced Busbice to pay $3,000,000 based on a promise and representation . . . ."); ¶ 56 ("Eustis engaged in fraud and fraudulent practices under TEX. GOV'T CODE ANN. § 4001.058 with respect to his role as an investment advisor to Busbice . . . ."); ¶ 65 ("IMP[C] and Eustis were members of a combination of two or more persons and the object of the combination was to accomplish (i) an unlawful purpose, or (ii) a lawful purpose by unlawful means."). While the fact that a plaintiff knew the identity of the nondiverse party prior to removal can be an indication that the purpose of the amendment is to defeat federal jurisdiction, "courts have also recognized that when a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction." *Lowe v. Singh*, No. CIV.A. H-10-1811, 2010 WL 3359525, at *2 (S.D. Tex. Aug. 23, 2010) (emphasis in original) (citation omitted). The breach of fiduciary duty claim, at least, appears to state a plausible claim for relief. Thus, this factor weighs in favor of granting leave to amend.

### 2. Plaintiff Has Not Been Dilatory

In addressing the second *Hensgen* factor, courts look to the amount of time between the original state court action and the motion to amend, the amount of time between removal and the motion to amend, and the state of the proceedings. *Id.* at *2. Although Plaintiff initiated this case in state court in 2021, IMPC did not receive notice until

September 2022. Plaintiff filed his Motion to Amend approximately 90 days after IMPC's removal and prior to the Court's ruling on IMPC's Motion to Dismiss. There have been no substantive proceedings in federal court beyond the parties' briefing on the pending motions. Under the circumstances, the Court finds that Plaintiff did not delay so long as to be considered dilatory. This factor weighs in favor of allowing the amendment.

### 3. Plaintiff Will be Significantly Injured if Joinder is Not Allowed

Busbice will be injured by denial of leave to amend to join Eustis because he would then have to pursue a separate cause of action against Eustis in state court, which "would increase costs, lead to judicial inefficiency, and may produce conflicting results." *Id.* at *3. This factor weighs in favor of granting leave to amend.

### 4. Other Equities Weigh in Favor of Joinder

While Plaintiff would be injured by parallel proceedings, IMPC will not be injured by joining Eustis. The Court recognizes IMPC's interest in retaining a federal forum, but that interest outweighed by Busbice's interest in complete relief. There is no reason IMPC cannot defendant Busbice's state law causes of action in state court.

### III.    Conclusion and Order

For the reasons set forth above, it is

ORDERED that Defendant's Motion to Dismiss and in the Alternative to Transfer (ECF 4) is DENIED; Defendant's Motion to Strike (ECF 17) is GRANTED IN PART AND DENIED IN PART; Plaintiff's Motion to Amend to add a non-diverse defendant (ECF 25) is GRANTED; and Plaintiff's Motion for Leave to File a Sur-Reply (ECF 28) is DENIED as moot.

The Court will issue a separate Remand Order.

Signed on March 17, 2023, at Houston, Texas.

                                                  Christina A. Bryan
                                                  United States Magistrate Judge